IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

EDWARD GROSS,

    Plaintiff,

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY,

    Defendant.

Case No. 1:17-cv-00828-CL

REPORT AND RECOMMENDATION

CLARKE, Magistrate Judge.

Plaintiff alleges Defendant breached the insurance policy it issued to Plaintiff, breached the covenant of good faith and fair dealing, intentionally inflicted severe emotional distress, and intentionally interfered with one or more contracts Plaintiff entered into with recreational vehicle parks. Plaintiff has moved for an intra-district transfer of venue (#5). Defendant has moved to dismiss Plaintiff's complaint or, in the alternative, for a transfer of venue (#8). For the reasons

below, the Court should deny Plaintiff's motion, grant Defendant's motion to dismiss, and deny Defendant's alternative motion for transfer of venue.[1]

## FACTUAL BACKGROUND

Plaintiff alleges that on August 25, 2015, he obtained a recreational vehicle ("RV") insurance policy from Defendant, an insurance company. Plaintiff entered into the contract in Indiana. He states that in early September 2015, he and his family "were traveling on Interstate 70 in Missouri when" his RV broke down. First Am. Compl. ¶ 9 [ECF No. 7.]. Plaintiff thus "utilized his roadside assistance with Defendant and obtained a tow through Defendant's agent." First Am. Compl. ¶ 10. Plaintiff contends, however, that the tow was conducted negligently, subjecting his RV to damage. Plaintiff argues that the negligently caused damages were a covered loss and that Defendant refused to compensate Plaintiff for the damages he suffered, thereby breaching the insurance policy. In addition, Plaintiff contends Defendant denied a later attempt at roadside assistance, also in breach of the policy.

Moreover, Plaintiff alleges "Defendant's agents went on an intentional campaign against Plaintiff to interfere with his life and ability to obtain the repairs to [his RV]." First Am. Compl. ¶ 13. On top of denying him a second attempt at roadside assistance, Plaintiff charges "Defendant's agents intentionally contacted recreational vehicle parks where Plaintiff was staying and presented Plaintiff, their customer, in a bad light that led directly to Plaintiff being told to leave such parks on at least one occasion." First. Am. Compl. ¶ 26. Plaintiff argues this caused him severe emotional distress; he also contends it amounted to the tort of intentional interference with contractual relations because "Plaintiff had a valid contract with one or more

---

[1]Defendant also moves to strike Plaintiff's complaint's reference to his minor child's medical expenses, as well as Plaintiff's prayer for attorney fees. Plaintiff has agreed to strike his prayer for attorney fees, acknowledging they are not recoverable in this matter. As for the reference to his child, because the Court recommends dismissing Plaintiff's complaint in its entirety, the Court should deny this motion as moot. Defendant shall then have the right to renew the motion, if necessary, upon Plaintiff's refiling of his complaint.

recreational vehicle parks" and "Defendant knew this or should have known this when its agents contacted said park." First Am. Compl. ¶¶ 30-31.

Plaintiff originally filed this case in the Portland Division of this District Court. The case was automatically transferred to the Medford Division because Plaintiff pleads he is a resident of Curry County, Oregon, a county within the Medford Division. Plaintiff seeks to have the case retransferred to the Portland Division. Defendant opposes this and also moves to dismiss Plaintiff's complaint. First, Defendant argues that venue does not lie in the District of Oregon and should be dismissed or transferred on that basis. Second, it asserts Plaintiff fails to state a claim for intentional infliction of emotional distress ("IIED") and for intentional interference with contractual relations, necessitating dismissal of these two claims.

The Court first addresses Defendant's motions to dismiss and transfer of venue, since they have the potential to moot Plaintiff's motion for intra-district transfer of venue.

## STANDARD

Pursuant to Rule 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

Dismissal under Rule 12(b)(6) is proper "if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). To survive a motion to dismiss for

failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (internal citations omitted).

## DISCUSSION

### I. IIED and intentional interference with contractual relations

#### A. IIED

Defendant contends Plaintiff's claim for IIED "contains only sweeping legal conclusions devoid of factual support" and therefore should be dismissed. Def.'s Mot. to Dismiss, at 8 [ECF No. 8.]. To state a claim for IIED, a plaintiff must plead that "'(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.'" *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995) (quoting *Sheets v. Knight*, 308 Or. 220, 236 (1989)). Intent is defined to mean "where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct." *Id.* at 550 (emphasis omitted). Socially intolerable conduct is conduct that is "outrageous in the extreme." *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or. App. 234, 239 (1992) (internal quotations and citations omitted). Conduct that is simply "rude, boorish, tyrannical, churlish and mean does not satisfy

that standard, nor do insults, harsh or intimidating words, or rude behavior ordinarily result in liability even when intended to cause distress." *Id.* (internal quotations and citations omitted).

Plaintiff fails to state a claim for IIED. As discussed, Plaintiff alleges "Defendant's agents intentionally contacted recreational vehicle parks where Plaintiff was staying" and portrayed Plaintiff in a bad light, causing the RV park or parks—Plaintiff is unsure how many parks this occurred at—to force him to leave. First. Am. Compl. ¶ 26. Plaintiff does not indicate when these alleged occurrences took place, nor does he state where exactly they took place; at best, he states Defendant's agents' conduct caused him to be removed "from at least one recreational vehicle park on the Oregon Coast." First Am. Compl. ¶ 13. Where on the Oregon coast, however, and what RV park or parks this took place at is still missing. Nor does Plaintiff plead facts plausibly suggesting the statements Defendant's agents made were "outrageous in the extreme." In fact, he does not in any way articulate what the statements were, instead conclusively stating that they portrayed Plaintiff "in a bad light." First Am. Compl. ¶ 26.

Plaintiff's broad, conclusory allegations of misconduct do not rise to the level of specificity required to survive pleading in federal court. Here, in essence, all Plaintiff has done is formulaically recite the elements for IIED; indeed, he conclusive states, without supplying any facts to support it, that "Defendant intended to inflict severe emotional distress, or had knowledge such distress was substantially certain due to its conduct"; that "[t]hese acts by Defendant were the direct and legal cause of the severe emotional distress suffered by Plaintiff"; and that "[t]hese acts . . . constitute an extraordinary transgression of the bounds of socially acceptable conduct by any insurance company towards its insured, Plaintiff." First. Am. Compl. ¶ 27. As the Supreme Court stated in *Twombly*, "a formulaic recitation of the elements of a cause of action," as exists here, "will not do." 550 U.S. at 545. Instead, Plaintiff must set forth

facts that would plausibly allow the Court to draw the inference that Defendant intentionally inflicted emotional distress on Plaintiff. *Iqbal*, 556 U.S. at 678-680. Here, however, Plaintiff pleads neither the statements that were made—which would allow the Court to plausibly infer they transcended the bounds of socially tolerable behavior—nor when or whom the statements were made to. Accordingly, the Court recommends dismissing Plaintiff's IIED claim, but doing without prejudice, since Plaintiff could cure these defeats through the addition of other facts. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that leave to amend should be granted even when no request has been made unless the court determines the pleading could not possibly be cured by the allegation of other facts).

### B. Intentional interference with contractual relations

Defendant argues Plaintiff's claim for intentional interference with contractual relations must be dismissed because he fails to allege Defendant acted through improper means or with an improper purpose. "To state a claim for intentional interference with economic and contractual relations, a plaintiff must allege that the defendant had knowledge of the plaintiff's contractual relationship and that the defendant's interference with those relationships was intentional." *Glubka v. Long*, 115 Or. App. 236, 239 (1992) (internal citation omitted). The plaintiff must also "allege 'either the pursuit of an improper objective of harming plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationship.'" *Id.* (quoting *Lewis v. Or. Beauty Supply Co.*, 302 Or. 616, 621 (1987) (rev'd on other grounds)).

Plaintiff fails to plausibly state a claim for intentional interference with contractual relations. As with his claim for IIED, Plaintiff's claim for intentional interference with contractual relations is far too conclusory to meet the heightened pleading standard set forth in *Twombly* and *Iqbal*. First, his complaint states that he had a valid contract with one or more RV

parks, yet he does not identify the RV park(s) whom he contracted with; in fact, at oral argument, Plaintiff was unsure where the actions he alleges in his complaint took place. Intentional interference with contractual relations "allows a party to a contract, when that contract is breached by the other contracting (second) party, to seek damages from a third party that induced the second party to breach the contract." *McGanty*, 321 Or. at 536. Without being able to identify whom Plaintiff contracted with, and thus who breached the contract, there is simply no way for the Court to plausibly infer that a contract existed for Defendant to interfere with.

Next, Plaintiff states, "Defendant knew [he entered into a contract to stay at the park] or should have known this when its agents contacted said park." First. Am. Compl. ¶ 31. Yet nothing in Plaintiff's complaint illustrates how it knew or should have known he had contracted with "said park"—in fact, Plaintiff himself does not know which park or parks it was. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief' requires more than labels and conclusions. . . ." *Twombly*, 550 U.S. at 555. Stating simply that Defendant knew or should of known Plaintiff contracted with unnamed parks certainly misses this standard.

In sum, then, Plaintiff's claim for intentional interference with contractual relations should be dismissed. As with his IIED claim, however, the Court believes dismissal with leave to amend is warranted because Plaintiff's defects could conceivably be cured factual enhancement. *See Lopez*, 203 F.3d at 1127 (holding that leave to amend should be granted even when no request has been made unless the court determines the pleading could not possibly be cured by the allegation of other facts).

/ / /

/ / /

/ / /

## C. Venue

Defendant maintains that venue is improper in this District because Plaintiff's suit derives from factual allegations that took place in Missouri and Colorado[2] and centers around a contract that was executed in Indiana. Consequently, Defendant requests that the Court exercise its discretion and dismiss the suit for improper venue. In the alternative, Defendant asks that the Court transfer the case to Missouri or Colorado.

Venue is proper in any judicial district where (1) a defendant resides, as long as all defendants are residents of the state in which the district is located; (2) a substantial part of the events or omissions leading to the claim or claims occurred, or where a substantial portion of the property subject to the action is located; or (3) if no other district exists, a district where the defendant or defendants are subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b).

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a defendant is entitled to move to dismiss a complaint for improper venue. Once the defendant moves to challenge venue under Rule 12(b)(3), the plaintiff has the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). If the district court determines venue is improper, it has discretion to dismiss, or, "if it be in the interest of justice," the court may transfer the case to a district where venue would have been proper. 28 U.S.C. § 1406(a).

"Under the doctrine of 'pendent venue,' a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative fact as a properly venued federal law claim, even if venue of the pendent claim otherwise would not lie." *Banfield v. UHS Home Attendants, Inc.*, No. 96 CIV. 4850 (JFK), 1997 WL 342422, at *2 (S.D.N.Y. Jun. 23, 1997) (internal citations omitted). In assessing whether pendent venue should be exercised, the court

---

[2] Although the complaint is unclear, Plaintiff appeared to acknowledge at oral argument that some of the alleged events occurred in Colorado.

considers "judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation, and fairness to the litigants." *Rodriquez v. Chandler*, 641 F. Supp. 1292, 1302 (S.D.N.Y. 1986). A court may not, however, exercise pendent jurisdiction based on claims that have been dismissed. *Walsh v. Bank of America NA*, 113 F. Supp. 3d 108, 114 (D.C. Cir. 2015).

In *Walsh*, the court dismissed the claims that arguably entitled the plaintiffs to venue in the District of Columbia. *Id.* Therefore, because the plaintiffs' remaining claims "all stem[med] from the mortgage on their Virginia property," and "[t]he events surrounding their claims did not occur in the District of Columbia, nor [did] the [plaintiffs] allege[] that any of the defendants [were] residents of the District of Columbia," the court found that it lacked venue. *Id.*

Here, all of the events leading to Plaintiff's IIED and intentional interference with contractual relations claims occurred in Oregon; thus, for those claims, venue would be proper in this District. Moreover, despite the fact that the events that led to Plaintiff's breach-of-contract claim[3] all occurred outside of Oregon and Defendant is not a resident of Oregon, making venue improper, it is likely that this Court could exercise pendent venue over Plaintiff's breach-of-contract claim. Indeed, the need for avoiding piecemeal litigation and the interests of judicial economy strongly militate toward hearing all of Plaintiff's claims in the same tribunal. Moreover, Defendant is a nationwide insurer; thus, hearing Plaintiff's breach-of-contract claim in this District as opposed to Missouri or Colorado would hardly inconvenience it, especially to the extent Plaintiff, a resident of Oregon, would be inconvenienced were the Court to transfer this single claim to Missouri or Colorado. Hence, pendent jurisdiction would seem to apply.

---

[3] The Court's reference to Plaintiff's claim for breach of contract also includes Plaintiff's claim for breach of the covenant of good faith and fair dealing, as the events giving rise to both claims appear to be identical.

Nonetheless, the Court recommends dismissing Plaintiff's IIED and intentional interference with contractual relations claims. Accordingly, as in *Walsh*, the claims that entitled Plaintiff to venue in Oregon are no longer viable. Additionally, as stated, the events surrounding Plaintiffs' remaining claim for breach of contract did not occur in Oregon, nor is Defendant a resident of Oregon. Hence, the Court lacks venue over Plaintiff's breach-of-contract claim.

As discussed, when venue is improper, the Court must dismiss the suit, or, if it be in the interests of justice, it may transfer the case to a district where it could have been brought. 28 U.S.C. § 1406(a). Here, the Court thinks the most sensible route is to dismiss the suit, rather than transfer it to a separate district. Because Plaintiff's two Oregon-related claims—IIED and intentional interference with contractual relations—should be dismissed without prejudice, Plaintiff could conceivably replead them with sufficient factual detail to adequately state a claim under Rule 12(b)(6). If he were to do so, the Court could then exercise pendent jurisdiction over his breach-of-contract claim and thus hear all of Plaintiff's claims together in a single tribunal, promoting judicial efficiency and minimizing expense.

On the other hand, if it were to transfer Plaintiff's single remaining claim to Missouri or Colorado, Plaintiff would be forced to either replead his Oregon-related claims in a venue halfway across the country and hope that the court exercises pendent venue over them or replead his Oregon-related claims here, which would mean litigating two separate cases against the same defendant in vastly different areas of the country. This scenario seems highly antithetical to the interests of judicial efficiency and economy.

Accordingly, because it would not be in the interests of justice to transfer Plaintiff's remaining breach-of-contract claim to another district, the Court recommends dismissing Plaintiff's suit pursuant to U.S.C. § 1406(a). Plaintiff should then have the right to refile his case

in this Court with amended, properly pleaded claims for IIED and intentional interference with contractual relations. Assuming he does so, the Court will then exercise pendent venue over his breach-of-contract claim. If Plaintiff chooses not to replead his claims for IIED and interference with contractual relations, however, he must refile his breach-of-contract claim in a district with proper venue, such as Missouri or Colorado.

## II. Intra-district transfer of venue

Finally, Plaintiff moves for an intra-district transfer of venue. As discussed, Plaintiff originally filed this case in the Portland Division; however, the case was automatically transferred to this Court because Plaintiff's complaint states he is a resident of Curry County. Plaintiff believes the Portland Division is more convenient because "the witnesses [in this case] are spread across the state, as well as in other states." Pl.'s Mot. for Change of Venue, at 3 [ECF No. 5.]. Hence, because of Portland's major airport, it "allows for easier access. . . ." Pl.'s Mot. for Change of Venue, at 3. Moreover, Plaintiff argues that while he is a resident of Curry County, over "the next few months," Plaintiff plans on staying along the northern Oregon coast as well as in southwest Washington, making Portland more convenient for him. Pl.'s Mot. for Change of Venue, at 3. Finally, Plaintiff argues that Portland is more convenient because Defendant's Oregon office is located in Portland. Defendant opposes Plaintiff's motion, arguing it would waste judicial resources, impose unnecessary inconvenience and expense, and would not significantly benefit Plaintiff.

Divisional venue is evaluated under three related authorities: The Federal Rules of Civil Procedure, the Local Rules of the District of Oregon, and statutes governing federal judicial procedure, 28 U.S.C. §§ 1391, 1404, and 1406. *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, Civ. No. 10-1129-AC, 2011 WL 1527598, at *2 (D. Or. Apr. 20, 2011). Under Rule

12(b)(3), while the plaintiff makes the initial choice of where to file suit, the defendant is entitled to challenge that choice as an affirmative defense, although it must be asserted in a responsive pleading and is waived if not mentioned therein. Fed. R. Civ. P. 12(h).

This Court's local rules also govern assignment of venue, as judicial districts are empowered by federal statute and Rule 83 to make local rules. *See* 28 U.S.C. § 137 ("The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court"); *see also* Fed. R. Civ. P. 83(a)(1) ("[A] district court . . . may adopt and amend rules governing its practice"). The Ninth Circuit affords broad discretion to district courts' interpretation of their local rules. *Jacobsen v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997) (rev'd on other grounds) (internal citation omitted).

Local Rule 3-2 divides the District of Oregon into four distinct divisions in an effort to "distribute the judicial work and to align counties for juror management purposes." The divisions—Portland, Eugene, Medford, and Pendleton—encompass every county in Oregon. "[T]he division in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated," is the division where venue lies. LR 3-2(b). This "substantial part" language mirrors the analogous portion of the federal venue statute, 28 U.S.C. § 1391(e).

As explained in *Nw. Envtl. Def. Ctr.*, courts in this District have held that LR 3-2 is "a mandatory requirement under which a case must be transferred if it was brought in the wrong division." Civ. No. 10-1129-AC, 2011 WL 1527598, at *4 (D. Or. Apr. 20, 2011) (internal quotations and citations denied). For example, the *Nw. Envtl. Def. Ctr.* court stated,

> In *Or. Natural Res. Council Fund v. Brong*, Civil No. 04–693–AA, Judge Haggerty transferred to Medford a case involving a Bureau of Land Management decision to implement a timber sale in Southern Oregon. Defendants were located in Portland, and the agency decision had been

made in Portland, but the burden of the harms alleged would be suffered in Medford.

*Id.* (internal citations omitted).

Here, aside from his breach-of-contract claim, which occurred outside of the District of Oregon, Plaintiff does not allege where the events giving rise to his claims occurred. In fact, he acknowledged at oral argument that he was unsure where in Oregon the harms related to his IIED and intentional interference with contractual relations claims took place. Instead, he argues, akin to the defendants in *Brong*, that Portland is more convenient because Defendant's local office is found there, Plaintiff will be near there over the next few months, and the airport makes it more convenient. As Judge Haggerty held, however, venue lies in the division where a substantial amount of the events or omissions giving rise to the claims occurred. And, at this point, neither the Court nor the parties are aware of where that is.

Consequently, if and when Plaintiff repleads his IIED and intentional interference with contractual relations claims and it becomes clear where the harms he alleged occurred, the Court should transfer venue, assuming it proves necessary. Until such time, however, the Court should decline to do so, as there are currently no viable claims and, most importantly, because the Court does not yet know where in Oregon the harms giving rise to Plaintiff's claims occurred, transferring the case to Portland only to discover that the harms occurred in the Medford Division would prove to be an immense waste of judicial resources. Thus, in sum, Plaintiff's motion for intra-district transfer of venue should be denied with the right to renew, if necessary, upon the refiling of his complaint.

## **RECOMMENDATION**

For the foregoing reasons, Defendant's motion to dismiss (#8) should be GRANTED, Defendant's alternative motion for transfer of venue (#8) should be DENIED, and Plaintiff's

motion for intra-district transfer (#5) should be DENIED. Plaintiff should have the right to refile his complaint within thirty days of the District Court's adoption of the Report and Recommendation. If he successfully repleads his claims for IIED and intentional interference with contractual relations, the Court should exercise pendent venue over his breach-of-contract claim. Moreover, if Plaintiff successfully repleads, he should be entitled to renew his motion for intra-district transfer, assuming the facts show, in line with the above analysis, that the Medford Division is the improper venue.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

It is so ORDERED and DATED this __9__ day of August, 2017.

_____
MARK D. CLARKE
United States Magistrate Judge