IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| EDWARD GROSS, | Case No. 1:17-cv-00828-CL |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

CLARKE, Magistrate Judge.

Plaintiff alleges Defendant breached the insurance policy it issued to Plaintiff, breached the covenant of good faith and fair dealing, intentionally inflicted severe emotional distress, and intentionally interfered with one or more contracts Plaintiff entered into or intended to enter into with recreational vehicle ("RV") parks and/or repair shops. Defendant has moved to dismiss Plaintiff's complaint or, in the alternative, for a transfer of venue (#24).[1] For the reasons below, the Court should deny Defendant's motion to dismiss and deny Defendant's alternative motion for transfer of venue.

---

[1]Defendant also moves to strike Plaintiff's Second Amended Complaint's request for attorney fees. Plaintiff has agreed to strike his prayer for attorney fees, acknowledging they are not recoverable in this matter.

Page 1 – REPORT AND RECOMMENDATION

Finally, Plaintiff has renewed a prior motion for intra-district transfer of venue (#30). For the reasons that follow, and because that motion can be ruled on without a Report and Recommendation, the Court grants Plaintiff's motion, though it transfers the case to the Eugene Division, not the Portland Division.

## FACTUAL BACKGROUND

Many of the operative facts were explained in the Court's August 9, 2017, Report and Recommendation (#16), adopted in full on September 4, 2017 (#19). These facts have not changed. Hence, in lieu of rehashing the facts, which are already well-known to the parties, the Court refers the parties to the August 2017 Report and Recommendation. Additional facts related to particular claims are discussed throughout.

As stated, Defendant moves to dismiss Plaintiff's Second Amend Complaint. First, Defendant contends that Plaintiff fails to state a claim for intentional infliction of emotional distress ("IIED") and for intentional interference with contractual relations. Next, Defendant argues that venue for the remaining claims does not lie in the District of Oregon and Plaintiff's remaining claims should be dismissed or transferred on that basis.

Plaintiff opposes Defendant's motion and also seeks to have the case transferred to the Portland Division. Plaintiff originally filed this case in the Portland Division of this District Court, but the case was automatically transferred to the Medford Division because Plaintiff's original complaint alleged that he was a resident of Curry County, Oregon, a county within the Medford Division.

## STANDARD

Pursuant to Rule 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. In order to state a claim for relief, a pleading

must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

Dismissal under Rule 12(b)(6) is proper "if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (internal citation omitted).

## DISCUSSION

### I. IIED and intentional interference with contractual relations

#### A. IIED

Plaintiff alleges "Defendant's agents went on an intentional campaign against Plaintiff to interfere with his life and ability to obtain [] repairs to [his RV]." Sec. Am. Compl. ¶ 13. On top of denying him an attempt at roadside assistance, Plaintiff charges "Defendant's employees and/or agents intentionally contacted recreational vehicle parks where Plaintiff was staying and presented Plaintiff, their customer, in a bad light that led directly to Plaintiff being told to leave

[RV] parks on numerous occasions." Sec. Am. Compl. ¶ 26. Plaintiff also contends Defendant's employees or agents also contacted numerous repair shops "Plaintiff intended to use for repairs or estimates on the [] RV, and presented Plaintiff [] in a bad light that led directly to Plaintiff being told the repair shops did not want to do business with [him]." Sec. Am. Compl. ¶ 27. Plaintiff argues this caused him severe emotional distress.

In moving to dismiss, Defendant opines that Plaintiff's claim for IIED fails to identify any statements purportedly made by Defendant or its agents, thus preventing the Court from plausibly inferring that they transcend the bounds of socially tolerable conduct, as required by Oregon law. Moreover, Defendant contends Plaintiff fails to draw the necessary causal link between Defendant's alleged actions and Plaintiff's supposed emotional distress. Finally, Defendant argues Plaintiff's factual allegations are replete of evidence demonstrating he suffered severe emotional distress.

To state a claim for IIED, a plaintiff must plead that "'(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.'" *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995) (quoting *Sheets v. Knight*, 308 Or. 220, 236 (1989)). Intent is defined to mean "where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct." *Id.* at 550 (emphasis omitted). Socially intolerable conduct is conduct that is "outrageous in the extreme." *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or. App. 234, 239 (1992) (internal quotation and citation omitted). Conduct that is simply "rude, boorish, tyrannical, churlish and mean does not satisfy

that standard, nor do insults, harsh or intimidating words, or rude behavior ordinarily result in liability even when intended to cause distress." *Id.* (internal quotation and citation omitted).

Plaintiff sufficiently alleges all three of the necessary elements for IIED. First, Plaintiff explicitly asserts that Defendant's employees' or agents' intentional communications with RV parks and with repair shops was done with the intent "to inflict severe emotional distress, or [with] knowledge such distress was substantially certain." Sec. Am. Compl. ¶ 28. Moreover, the facts Plaintiff has included in his Second Amended Complaint tend to corroborate such allegations, especially when viewed in the light most favorable to him. For example, he alleges Defendant's employee, Matt Carozza, "in order for the RV to become junk," "told [B & C Auto Repair] to tear the RV apart . . . and that Defendant then would not pay to put the RV back together." Sec. Am. Compl. ¶ 27(a). Such potentially injurious behavior, if true, is substantially certain to result in severe emotional distress. *See Williams v. Tri-Cty. Metro. Transp. Dist. of Or.*, 153 Or. App. 686, 691 (1998) (citing *Whelan v. Albertson's, Inc.*, 129 Or. App. 501 (1994)) (stating that conduct involving not merely "rudeness or petty indignities, but conduct with the potential to be specially . . . injurious" constituted an extraordinary transgression of socially tolerable conduct).

Next, despite Defendant's argument to the contrary, Plaintiff alleges a causal connection; in fact, he directly states that the aforementioned communications by Defendant's employees or agents "w[as] the direct and legal *cause* of the severe emotional distress suffered by Plaintiff." Sec. Am. Compl. ¶ 28 (emphasis added). Plaintiff then includes specific examples. *See, e.g.*, Sec. Am. Compl. ¶ 26(a) (stating that the owner of the RV park, Mt. View RV Park, "told Plaintiff . . . that [he] needed to leave *only after* [the owner] had received a telephone call from Defendant's employee") (emphasis added). Such factual detail, which includes examples, is sufficient to rise

above the speculative level, and while Defendant may disagree with Plaintiff's assertions, the Court is obligated to accept the allegations of material fact as true and construe those allegations in the light most favorable to Plaintiff. *Odom*, 486 F.3d at 545 (internal citation omitted).

Finally, Plaintiff sufficiently pleads the third element of IIED. In previously dismissing Plaintiff's IIED claim, this Court cited a combination of two factors that led it to find that Plaintiff's allegations were not sufficiently specific. First, it noted Plaintiff failed to "indicate when the[] alleged occurrences took place" or "where exactly they took place." First R. & R., at 5 [ECF No. 16.]. Instead, Plaintiff merely stated that "Defendant's agents' conduct caused him to be removed 'from at least one recreational vehicle park on the Oregon Coast.'" First R. & R., at 5 (quoting the First Am. Compl. ¶ 13). Second, the Court cited Plaintiff's failure to articulate what the supposedly outrageous statements were, "instead conclusively stating that they portrayed Plaintiff 'in a bad light.'" First R. & R., at 5 (quoting First Am. Compl. ¶ 26).

Plaintiff has sufficiently cured both deficiencies. In Plaintiff's Second Amended Complaint, he lists five RV parks that were allegedly contacted by Defendant's agents or employees and identifies when two of the allegedly improper communications took place. *See* Sec. Am. Compl. ¶ 26(a)-(e). In addition, he includes five repair shops that were likewise purportedly contacted and includes a date for one of the alleged communications. Sec. Am. Compl. ¶ 27(a)-(e). Finally, instead of only conclusively stating that Defendant's agents' or employees' statements portrayed him in a bad light, Plaintiff now identifies the specifics of one statement made by Defendant's employees or agents; as stated, he now alleges Defendant's employee, Mr. Carozza, "in order for the RV to become junk," "told [B & C Auto Repair] to tear the RV apart . . . and that Defendant then would not pay to put the RV back together." Sec. Am. Compl. ¶ 27(a).

While Plaintiff has not identified the dates, or the details, of every allegedly improper communication he reports took place between Defendant's agents or employees and RV parks and repair shops, "[a] federal claimant is not required to detail all factual allegations"; rather, the allegations need only "'raise a right to relief above the speculative level.'" *Mishler v. Care Ctr. Inc.*, No. CV 08-00568-MO, 2008 WL 4224832, at *1 (D. Or. Sept. 10, 2008) (quoting *Twombly*, 127 S. Ct. at 1965). Plaintiff's incorporation of the details of one such communication, the dates of others, as well as the inclusion of the names of numerous RV parks and repair shops whom Defendant's agents or employees purportedly communicated with, satisfies this requirement.

Indeed, the above-mentioned statement by Mr. Carozza, if true, could plausibly constitute an extraordinary transgression of socially tolerable conduct. "Whether conduct is an extraordinary transgression is a fact-specific inquiry, to be considered on a case-by-case basis, considering the totality of the circumstances." *Rosenthal v. Erven*, 172 Or. App. 20, 23 (2001) (internal citation omitted). "The crux of the issue," Oregon courts have stated, is whether the behavior, "as alleged in the complaint, could be considered, at most, commonplace 'friction and rudeness among people in day-to-day life,' or whether a jury reasonably could find it offensive in some extraordinary way." *Williams*, 153 Or. App. at 690 (1998) (quoting *Hetfeld v. Bostwick*, 136 Or. App. 305, 308 (1995), *rev. den.* 322 Or. 360 (1995)).

Here, the specific statement, as well as the general conduct Plaintiff points to, was not simply rude or petty but had the direct effect of being injurious to Plaintiff by preventing him from obtaining necessary repairs to his RV. *See Williams*, 153 Or. App. at 691 (citing *Whelan v. Albertson's, Inc.*, 129 Or. App. 501 (1994)) (stating that conduct involving not merely "rudeness or petty indignities, but conduct with the potential to be specially . . . injurious" constituted an extraordinary transgression of socially tolerable conduct). Moreover, such conduct was not

engaged in by some third party with a tenuous relationship to Plaintiff but by Plaintiff's insurance company, through which he maintained coverage of the RV he sought repairs for. [W]hether a special relationship exists between the defendant and the plaintiff . . . bear[s] upon the offensiveness of the conduct[.]" *Rosenthal*, 172 Or. App. at 23. In this vain, "outrageous bullying tactics" by insurers have "helped define and develop IIED[.]" *Prosser and Keeton on Torts*, § 12, at 62; *Young v. Allstate Ins. Co.*, 119 Haw. 403, 425 (2008).

Moreover, the facts as set forth in the Second Amended Complaint do not involve "unfortunate but not uncommon behavior" that is tolerated by society. *Rosenthal*, 172 Or. App. at 24. Indeed, given the nature of the relationship between an insurer and its insured, whereby the insurer is obligated to exercise control in the insured's best interests, *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 161-62 (2001) (internal citation omitted), it should go without saying that society does not tolerate the suggestion by the employee of an insurance company that a third party take action to destroy the insured property. Therefore, when viewed in the light most favorable to Plaintiff, the statement allegedly made by Mr. Carozza while acting on Defendant's behalf constituted an extraordinary transgression of the bounds of socially tolerable conduct. Because Plaintiff has plausibly pleaded the other two elements of an IIED claim, he sufficiently states a claim for relief.

### B. Intentional interference with contractual relations

Relying on the factual allegations supporting his claim for IIED, Plaintiff alleges Defendant "intended to disrupt the performance" of Plaintiff's contracts or prospective business relationships with RV parks and RV repair shops. Sec. Am. Compl. ¶ 35. Defendant argues Plaintiff's claim for intentional interference with contractual relations fails because Plaintiff does

not allege Defendant acted through improper means or with an improper purpose and cannot show causality.

"To state a claim for intentional interference with economic relations," a plaintiff must allege "(1) the existence of a valid business relationship or expectancy, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to economic relations, and (6) damages." *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 651 (1995) (internal citation omitted).

Plaintiff plausibly states a claim for intentional interference. This Court previously dismissed Plaintiff's intentional interference claim because Plaintiff did not identify the RV parks that he allegedly contracted with, and at oral argument was even unsure of where the actions he alleges in his complaint took place. "Without being able to identify whom Plaintiff contracted with, and thus who breached the contract," the Court stated, "there is simply no way for the Court to plausibly infer that a contract existed for Defendant to interfere with." First R. & R., at 7. Plaintiff has cured this defect; indeed, as discussed, his Second Amended Complaint names five RV parks where he stayed that were allegedly contacted by Defendant's agents or employees and identifies when two of the allegedly improper communications took place. *See* Sec. Am. Compl. ¶ 26(a)-(e). Plaintiff alleges he had a contract with each one. *See* Sec. Am. Compl. ¶ 31. In addition, he includes five repair shops and alleges he attempted to establish a business relationship with each shop. Sec. Am. Compl. ¶ 27(a)-(e), 33. Accordingly, the first element of intentional interference is met.

Next, Plaintiff adequately pleads facts plausibly suggesting the existence of the remaining elements of intentional interference. In *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or.

201, 210 (1978), the plaintiff alleged that the defendant, an insurance company, "sought to and did induce [the plaintiff's] patrons not to have [the plaintiff] repair their automobiles" by "making false statements about the quality of plaintiff's workmanship and threats about withdrawing insurance coverage or subjecting the settlement of claims to possible arbitration." The plaintiff "also alleged that this was done 'with the sole design of injuring Plaintiff and destroying his business,' and in an endeavor to 'compel Plaintiff to abandon the same.'" *Id.* The Court noted that if these allegations of improper motives and improper means of interference were proven true, and accompanied by proof of damages and causation, they would "satisfy the elements of the tort" of intentional interference. *Id.* at 210-11.

With regard to Defendant's alleged interference with repair shops, Plaintiff, as was the case in *Top Serv.*, alleges that Defendant intended to and did disrupt prospective business relationships by making false statements about Plaintiff, by portraying Plaintiff in a false light, and, in the case of Mr. Carozza, threatening to withdraw insurance coverage. Plaintiff then alleges, like the Plaintiff in *Top Serv.*, that Defendant's agents' "intentional campaign" was purposefully undertaken to injure Plaintiff by "interfer[ing] with his life and ability to obtain [necessary] repairs." Sec. Am. Compl. ¶ 13. Finally, Plaintiff alleges damages and causation, specifically stating that forcing him to seek new repair shops harmed him and asserting that Defendant's "acts . . . were a substantial factor in causing" the economic harm alleged. Sec. Am. Compl. ¶¶ 35-36. These allegations therefore "satisfy the elements of the tort" of intentional interference. *Top Serv.*, 283 Or. at 211.

The same is true with respect to Plaintiff's allegation that Defendant improperly interfered with "valid contracts" between Plaintiff and various RV parks. Sec. Am. Compl. ¶ 31. Plaintiff alleges Defendant disrupted his contractual relationships with Mt. View RV Park,

Pendleton KOA Journey, Mill Casino Hotel and RV Park, Madrona & 101 RV Park, and Faith Baptist Church by contacting these parks and making false statements and portraying him in a bad light. Next, as with his claim for improperly interfering with repair shops, Plaintiff contends that Defendant's agents' "intended to disrupt the performance of these contracts, and then did disrupt the[ir] performance by forcing Plaintiff to leave said parks" and that this "intentional campaign" was purposefully undertaken to injure Plaintiff by "interfer[ing] with his life and ability to obtain [necessary] repairs." Sec. Am. Compl. ¶¶ 13, 35. Finally, Plaintiff alleges this forced relocation caused him economic loss and was caused by Defendant's agents' aforementioned actions. Consequently, each element of intentional interference with contractual or economic relations is satisfied and Plaintiff's claim for intentional interference is sufficiently pleaded.

### C. Venue[2]

Plaintiff's remaining claims are for breach of contract and for breach of the covenant of good faith and fair dealing. Both claims stem from the RV insurance policy Plaintiff entered into with Defendant. Defendant maintains that venue is improper in this District because Plaintiff's two remaining claims derive from factual allegations that took place in Missouri and Colorado and centers around a contract that was executed in Indiana. Consequently, Defendant requests that the Court exercise its discretion and dismiss the suit for improper venue. In the alternative, Defendant asks that the Court transfer the case to Missouri or Colorado.

Venue is proper in any judicial district where (1) a defendant resides, as long as all defendants are residents of the state in which the district is located; (2) a substantial part of the events or omissions leading to the claim or claims occurred, or where a substantial portion of the

---

[2]Because the Court is able to address this issue without reference to the documents Plaintiff asks the Court to take judicial notice of, the Court declines to address Plaintiff's request for judicial notice at this time [ECF No. 28, Attach. 1.]. If it becomes necessary later in the course of litigation, Plaintiff may renew his request.

property subject to the action is located; or (3) if no other district exists, a district where the defendant or defendants are subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b).

"Under the doctrine of 'pendent venue,' a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative fact as a properly venued federal law claim, even if venue of the pendent claim otherwise would not lie." *Banfield v. UHS Home Attendants, Inc.*, No. 96 CIV. 4850 (JFK), 1997 WL 342422, at *2 (S.D.N.Y. Jun. 23, 1997) (internal citation omitted). In assessing whether pendent venue should be exercised, the court considers "judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation, and fairness to the litigants." *Rodriquez v. Chandler*, 641 F. Supp. 1292, 1302 (S.D.N.Y. 1986).

Here, the Court previously dismissed Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing because the events that led to these claims occurred outside of Oregon and Defendant was and is not a resident of Oregon, making venue improper.[3] Additionally, the Court concluded that exercising pendent venue was improper. Indeed, while noting that all the events leading to Plaintiff's IIED and intentional interference claims occurred in Oregon, making venue for such claims proper, the Court noted that those claims had been dismissed, and a court may not exercise pendent jurisdiction based on claims that have been dismissed. *Walsh v. Bank of Am. NA*, 113 F. Supp. 3d 108, 114 (D.D.C. 2015).

Thus, the Court dismissed Plaintiff's remaining two claims for improper venue. The Court stated, however, that if Plaintiff later successfully repleaded his IIED and intentional

---

[3] Plaintiff argues venue is proper in this District because Defendant has continued, sustained, and regular business activities in this state, subjecting it to this Court's personal jurisdiction. Plaintiff is incorrect. While a corporation, such as Defendant, is deemed to reside, for purposes of venue, in "any judicial district in which [the corporation] is subject to the court's personal jurisdiction," 28 U.S.C. § 1391(c), the Supreme Court in *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) held that a corporation is subject to general personal jurisdiction—the kind Plaintiff speaks of here—only where it is incorporated and where it maintains its principal place of business. Defendant is incorporated in Ohio and also maintains its principal place of business there. Accordingly, Defendant is not subject to general personal jurisdiction and therefore does not reside in this District.

interference claims, the Court could exercise pendent jurisdiction over his claims for breach of contract and breach of the covenant of good faith and fair dealing. As discussed in the prior two sections, Plaintiff has adequately pleaded claims for IIED and intentional interference. Because venue for these claims properly lies in this District, the doctrine of pendent venue entitles this Court to hear Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing, even though "venue of the pendent claim[s] otherwise would not lie." *Banfield*, 1997 WL 342422, at *2 (internal citation omitted).[4]

## II. Intra-district transfer of venue

Finally, Plaintiff moves for an intra-district transfer of venue. As discussed, Plaintiff originally filed this case in the Portland Division, but the case was automatically transferred to this Court because Plaintiff's original complaint stated he was a resident of Curry County. Plaintiff believes the Portland Division is more convenient because "the witnesses are spread across the state, as well as in other states," and Portland's major airport "allows for easier access." Pl.'s Renewed Mot. for Change of Venue, at 3. Plaintiff also argues that while he is a resident of Curry County, over "the next few months," he plans on staying along the northern Oregon coast as well as in southwestern Washington, making Portland more convenient for him. Pl.'s Renewed Mot. for Change of Venue, at 3. Finally, Plaintiff argues that Portland is more convenient because Defendant's Oregon office is located in the Portland Division. Defendant opposes Plaintiff's motion, arguing it would waste judicial resources; impose unnecessary

---

[4]The Court notes that Plaintiff's pendent claims arise out of the same nucleus of operative fact as Plaintiff's IIED and intentional interference claims. Indeed, though some of the central facts will certainly be different, all of the claims center on Plaintiff's relationship to Defendant as its insured. Most importantly, however, "[i]n determining whether to exercise pendent venue of a claim, the Court must consider 'judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants.'" *Banfield*, 1997 WL 342422, at *2 (quoting *Rodriguez*, 641 F. Supp. at 1302). And, here, if the Court were to transfer Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing to Missouri or Colorado, Plaintiff would be forced to litigate two separate cases against the same defendant in vastly different areas of the country. This scenario seems highly antithetical to the interests of judicial efficiency and economy. Moreover, in litigating all of the issues here, Defendant is also saved from the inconvenience of litigating in two separate forums.

inconvenience and expense; would not significantly benefit Plaintiff, as he is currently residing in the Eugene Division; and the majority of allegations arise from events that occurred in the Medford Division.

Because "[t]ransfers of venue are not one of the named exceptions in 28 U.S.C. § 636(b)(1)(A)," and because "[g]ranting a motion to transfer venue does not terminate a case within the federal court system," it is within the providence of a magistrate judge's authority to order such transfers. *Paoa v. Marati*, Civ. No. 07-00370 JMS/LEK, 2007 WL 4563938, at *2 (D. Haw. Dec. 28, 2007). The Court will therefore dispense with this motion without writing a Report and Recommendation.

Divisional venue is evaluated under three related authorities: The Federal Rules of Civil Procedure, the Local Rules of the District of Oregon, and statutes governing federal judicial procedure, 28 U.S.C. §§ 1391, 1404, and 1406. *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, Civ. No. 10-1129-AC, 2011 WL 1527598, at *2 (D. Or. Apr. 20, 2011). Under Rule 12(b)(3), while the plaintiff makes the initial choice of where to file suit, the defendant is entitled to challenge that choice as an affirmative defense, although it must be asserted in a responsive pleading and is waived if not mentioned therein. Fed. R. Civ. P. 12(h).

This Court's local rules also govern assignment of venue, as judicial districts are empowered by federal statute and Rule 83 to make local rules. *See* 28 U.S.C. § 137 ("The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court"); *see also* Fed. R. Civ. P. 83(a)(1) ("[A] district court . . . may adopt and amend rules governing its practice"). The Ninth Circuit affords broad discretion to district courts' interpretation of their local rules. *Jacobsen v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997) (rev'd on other grounds) (internal citation omitted).

Local Rule 3–2 divides the District of Oregon into four distinct divisions in an effort to "distribute the judicial work and to align counties for juror management purposes." The divisions—Portland, Eugene, Medford, and Pendleton—encompass every county in Oregon. "[T]he division in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated," is the division where venue lies. LR 3–2(b). This "substantial part" language mirrors the analogous portion of the federal venue statute, 28 U.S.C. § 1391(e).

As explained in *Nw. Envtl. Def. Ctr.*, courts in this District have held that LR 3–2 is "a mandatory requirement under which a case must be transferred if it was brought in the wrong division." Civ. No. 10-1129-AC, 2011 WL 1527598, at *4 (D. Or. Apr. 20, 2011) (internal quotations and citations denied). For example, the *Nw. Envtl. Def. Ctr.* court stated,

> In *Or. Natural Res. Council Fund v. Brong*, Civil No. 04-693-AA, Judge Haggerty transferred to Medford a case involving a Bureau of Land Management decision to implement a timber sale in Southern Oregon. Defendants were located in Portland, and the agency decision had been made in Portland, but the burden of the harms alleged would be suffered in Medford.

*Id.* (internal citations omitted).

Here, in previously denying Plaintiff's motion for intra-district transfer, the Court noted that, aside from Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing, which occurred outside of the District of Oregon, Plaintiff did not allege where the events giving rise to his IIED and intentional interference claims occurred, and even acknowledged at oral argument that he was unsure where in Oregon the harms related to these claims took place. "Instead," the Court stated,

> he argues, akin to the defendants in *Brong*, that Portland is more convenient because Defendant's local office is found there, Plaintiff will be near there over the next few months, and the airport makes it more convenient. As

> Judge Haggerty held, however, venue lies in the division where a substantial amount of the events or omissions giving rise to the claims occurred. And, at this point, neither the Court nor the parties are aware of where that is.

First R. & R., at 13. Therefore, the Court denied Plaintiff's motion with leave to renew "if and when Plaintiff repleads his IIED and intentional interference with contractual relations claims and it becomes clear where the harms he alleged occurred[.]"First R. & R., at 13.

In line with the Court's holding, Plaintiff's Second Amended Complaint includes the locations of five RV parks and five repair shops where he alleges the harms occurred. Of these ten locations, five are found in the Eugene Division, three in the Pendleton Division, and two in the Medford Division. None of the events or omissions giving rise to the alleged claims for relief occurred in the Portland Division; however, Plaintiff states that he would be satisfied were the Court to transfer the case to the Eugene Division.

The Court finds transfer to the Eugene Division warranted. Again, as Judge Haggerty held in *Brong*, and as the District of Oregon's Local Rules make clear, the Division where "a substantial part of the events or omissions giving rise to the claim occurred," is the division where venue lies. LR 3–2(b). Based on the allegations in Plaintiff's Second Amended Complaint, which the Court accepts as true, the plurality of the events giving rise to the claims in this case occurred in the Eugene Division, rendering it the proper venue for this action. Accordingly, following the district judge's ruling on this Court's Report and Recommendation, which, as laid out above, recommends denying Defendant's motion to dismiss and/or to transfer venue, the Clerk shall transfer the files to the Clerk for the Eugene Division.

///

///

///

## RECOMMENDATION

For the foregoing reasons, Defendant's motion to dismiss (#24) should be DENIED and Defendant's alternative motion for transfer of venue (#24) should be DENIED, as venue is proper in this District.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

## ORDER

Next, because it is within the providence of a magistrate judge's authority to order a transfer of venue, the Court hereby GRANTS Plaintiff's motion for intra-district transfer of venue to the Eugene Division (#30). Therefore, following the district judge's ruling on the Court's Report and Recommendation, the Clerk shall transfer the files to the Clerk for the Eugene Division.

It is so ORDERED and DATED this ___5___ day of December, 2017.

MARK D. CLARKE
United States Magistrate Judge